THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENT, v. JACOB J. CROUNSE, APPELLANT.

*Public nuisance — caused by an obstruction on private property created by direction
of the commissioner of highways — evidence, rule as to striking it out — liability of
a husband while acting as agent of his wife.*

The construction of an embankment upon private land with the result of causing
surface water thereafter, and because thereof, to flow upon a public highway to
its injury and to the prejudice of the rights of the public using the same, where
such work has been done by direction of the commissioner of highways of
the town, does not justify any charge or inference of malice against the party
doing it.

Where a party is indicted for such obstruction of the highway, he is entitled to
give evidence showing that the act done by him was done by direction of the
commissioner of highways.

*Semble*, that although such commissioner of highways may fail, in such a case, in
judgment, the act done pursuant to his direction cannot be punished criminally.
*Quin* v. *Lloyd* (41 N. Y., 349) followed.

A party who allows evidence to be received without objection, cannot thereafter,
when he finds it to be adverse to him, move to strike it out.

A husband, while acting as the agent of his wife, cannot be made liable and
punished for continuing a nuisance upon land owned by the wife.

APPEAL from a judgment, rendered at the County Sessions of
Albany county on the 30th day of April, 1887, convicting the
defendant on an indictment charging him with the crime of "public
nuisance," in that he did unlawfully and willfully interfere with
and obstruct, and unlawfully render dangerous for passage, a cer-
tain public highway in the township of Knox, in the county of
Albany; and did erect and construct on certain lands, in the indict-
ment referred to, a certain dam, embankment or structure, in and
under the road-fence adjoining thereto; and did, willfully and mali-
ciously and unlawfully, cause and procure the same to be so built
and constructed; and did unlawfully continue to maintain the said
dam, erection and structure, by reason whereof a certain stream
of water was turned back upon and overflowed the said public
highway, and washed away the earth therefrom and rendered the
same dangerous for passage.

*Jacob Clute*, for the appellant.

*Hugh Reilly*, district attorney, for the respondent.

Ingalls, J. :

The defendant was, by indictment, charged with having, on the 5th day of June, 1885, wickedly, unlawfully and willfully interfered with and obstructed a public highway in the town of Knox, in the county of Albany, and thereby caused the water to flow upon such highway to its injury and to the prejudice of the rights of the public who were entitled to use the same as a public highway. The prosecution gave evidence at the trial to the effect that, in 1885, an embankment existed under the fence adjacent to such highway and upon land occupied by the defendant, but which the evidence shows was owned by Mrs. Jane Crounse, who resided with her husband upon the same premises. Such embankment was removed by the defendant, who subsequently filled up the ground upon the premises occupied by him, thereby creating what was claimed by the prosecution to constitute an obstruction to the flow of the water in its natural course. Such filling was accomplished by the deposit of stone, gravel and other materials a short distance from where the obstruction first mentioned was located. Considerable evidence was produced at the trial in regard to such structures, and the extent thereof, and the effect produced by them in regard to the flow of the water upon the highway. It seems from the evidence, as we understand it, that the water which accumulated upon the land occupied by the defendant was surface water, which at certain seasons of the year disappeared. The view which we take of this case does not render it necessary to examine the evidence or to discuss the same to any considerable extent, for the reason that we have become convinced that legal errors were committed at the trial which prejudiced the case of the defendant to an extent which calls for a reversal of the judgment. One material error consisted of the striking out, upon the motion of the district attorney, of the evidence of Andrew J. Armstrong, the commissioner of highways, who was examined as a witness on the part of the defendant, for the purpose of showing that whatever he did in removing the embankment and filling upon the land which he occupied, was done by the direction of such commissioner of highways of the town of Knox. The

motion and the decision thereon appear in the following evidence of the witness Armstrong:

ANDREW J. ARMSTRONG, sworn for the defendant. Examined by Mr. CLUTE:

Q. Where do you live now? A. Town of Wright, Schoharie county. Q. How long have you lived there? A. I moved there about a week before the first of April of this year. Q. You moved there, then, in March, 1887? A. Yes, sir. Q. Where did you move from? A. Knox. Q. How long had you lived there? A. I was born there, and I had been out of the town, I guess, three years, and I was forty years old in March; about thirty-seven years. Q. Were you ever commissioner of highways of that town? A. I was in 1885. Q. Were you acquainted with this road that passes between the Methodist Church and the school-house, starting from the Schoharie road over to the street? A. I have always traveled it more or less; not a great deal of late years. Q. While you were commissioner of highways did you make an examination of that road? A. I did. Q. And of those sluices? A. Yes, sir. Q. And where the water was running? A. I did. Q. Did you see Mr. Crounse? A. I did. Q. And have a talk with him about it? A. Yes, sir. Q. As commissioner, did you take counsel as to what you should do to the road? A. Yes, sir. Q. What instructions, if any, did you give Mr. Crounse, as commissioner? A. I said to Mr. Crounse that we would each pick a man that would take good counsel; he could and I would; and as they decided so it should go; and he told me to pick mine first, and I did so; then he said "we won't pick but one, we will leave it to him," and we did so; I stated the case as near as I could and the counsel decided? Q. After getting the decision of the counsel, then what did you say to Mr. Crounse? A. I told Mr. Crounse he could open the ditch on the side of the road and let the water run. Q. Did you say anything to him about filling up on the side of his land or fence? A. Yes, sir; I think so. Q. Where the water had been running? A. Yes, sir. Q. What did you state to him? A. I told him he could fill that up; I didn't think there was any place for water to run there. Q. You have examined the land adjoining this road at that place, have you? A. Yes, sir. Q. The water that comes from the west and crosses over and comes into this place,

·where does it go to ?   A. There had been some time a ditch cut through when I was there; it run into a piece of low land, as I should call it, in the second field, and there it remained until they dug a ditch and let it out.   [The district attorney moved to strike out the witness's evidence as to what he directed defendant to do, on the ground as commissioner of highways he was not authorized to permit the obstruction of a water course or the flooding of a highway; that even if he did give such instructions to Mr. Crounse, Mr. Crounse was not justified in obeying them.   Motion granted. Defendant excepts.]   Q. What, if anything. did you say to Mr. Crounse about opening the ditches on the side of the road or taking away this embankment at both ends of that sluice ?   A. I told him that he could.   Q. Have you been over here in Crounse's field to make an examination of where this high ground, where the two portions come together ?   A. I haven't been there since the fall of 1885.

We are satisfied that the evidence stricken out was competent and material to the defendant's case.   It at least tended to repel any charge or inference of malice, which was an element of the offense charged against the defendant.   The defendant was called upon to vindicate his conduct and was entitled to explain the motives by which he was actuated in what he did.   It is difficult to conceive more satisfactory evidence upon that subject than that testified to by Armstrong and stricken out by the court.   Such evidence was to the effect that the defendant sought and acted under the advice and direction of the officer of the town, who was · charged with the care of the highways of the town, and was, therefore, competent to direct in regard to them.   (*McFadden* v. *Kingsbury*, 11 Wend. 667.) And if such officer failed in judgment in regard to the direction which he gave to Crounse, certainly the latter should not be punished criminally for following it.   We do not undertake to decide precisely the force and effect which the jury should give to that evidence, but merely that it was competent and material for them to consider in connection with the other facts of the case.   Such evidence was received without objection by the district attorney, and we think it was error on the part of the court to strike it out after it had been so received.   A party is not at liberty at a trial to remain quiet when evidence is being given and allow the same to be received

without objection, and after speculating in regard to its effect, cause it to be striken out, as the motion under such circumstances comes too late. (*Quin* v. *Lloyd*, 41 N. Y., 349.) Judge WOOD-WORTH, at page 355, says: " A party against whom a witness is called and examined, cannot lie by and speculate on the chances; first learn what the witness testifies and then, when he finds the testimony unsatisfactory, object either to the competency of the witness or to the form or substance of the testimony. * * * The counsel may have been careless in permitting testimony to be given without objection, which perhaps would have been excluded if objected to; but this will not authorize the referee to strike it out after it has been received." It does not seem to be a satisfactory answer that the district attorney attempted in this manner to raise a legal question in regard to the competency of the evidence, as that he could have accomplished by a direct request to the court to charge the jury in regard to the legal effect of such evidence without violating a plain rule of evidence. It will be perceived, by reference to page 64 of the case, that the prosecution resorted to the same species of evidence by the examination of Charles Armstrong as follows:

CHARLES ARMSTRONG sworn on behalf of the people. Examined by District Attorney REILLY :

" Q. Are you path-master ? A. I was in 1886. Q. You know this stream ? A. I do. Q. And have known it for a number of years ? A. Twenty years. Q. What was its course — through Crounse's land as described ? A. Yes, sir. [Objected to.] Q. What was its course ? A. Came down and across the road and went on to the lands occupied by Mr. Crounse. Q. When was that ? A. 1885. Q. How ? A. Dam in the fence where it had crossed through. Q. What, if anything, did you do in reference to that dam as path-master ? A. I wasn't path-master.

DISTRICT ATTORNEY : — I propose to show by this witness that by order of the commissioner he removed this dam.

Q. What did you do in reference to that obstruction ? A. Made a complaint to the commissioner of highways. Q. Then what was done ? A. He ordered me to remove it. Q. Did you remove it ? A. I did by help of district. Q. What do you mean by that ? A. These that are assessed on the road."

It would seem that the defendant was entitled to the benefit of a principle thus established upon the same trial at the instance of the prosecution.

In this case it appears that the farm, upon which the obstructions are claimed to have been placed and continued by the defendant, was owned by Mrs. Crounse, the wife of the defendant, and that she resided upon the premises at the time. Under such circumstances it has been decided by this court that the husband, while acting as the agent of the wife, cannot be made liable and punished for continuing a nuisance upon such lands. (*People* v. *Livingston*, 27 Hun, 105.) The indictment herein charges the defendant with continuing such alleged nuisance. And, therefore, this case is brought clearly within the doctrine of the case cited.

For the reasons assigned we conclude that the conviction should be reversed and a new trial granted.

LEARNED, P. J., and LANDON, J., concurred.

LANDON, J.:

Concurring with my Brother INGALLS, I add that the offense of committing a nuisance upon a public highway consists, among other things, in unlawfully doing an act which unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage the highway. (Penal Code, § 385.)

The evidence which the court struck out, on motion of the prosecution, tended to show that the act of the defendant in 1885, in diverting the stream from its natural course through the lot of defendant's wife to a course along the highway, was done by defendant under the authority of the commissioners of highways. Assuming the truth of what was thus attempted to be shown to be true, the act of defendant was, in effect, the act of the commissioner. Commissioners of highways have the care and superintendence of the highways and bridges in their respective towns, and it is their duty to give directions respecting the repairing of the roads and bridges. (1 R. S., 501, § 1.) It does not appear that there was more than one commissioner in this town. I think the commissioner had the power to direct respecting the proper treatment of this watercourse, and that if in exercising his authority he made a mistake, it was, in the absence of evidence to the contrary, simply a mistake

in judgment, which in no degree impaired the power and author-
ity which he exercised. The defendant, if acting under such
authority, did not, therefore, act unlawfully, and hence his action
would not come within the terms of the Penal Code above referred
to. If defendant after the above authority was revoked repeated
the act in 1886, he was not indicted for it.

LEARNED, P. J., concurred.

Judgment and conviction reversed and new trial granted.