DETERMINED IN THE

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## June, 1890.

THE PEOPLE OF THE STATE OF NEW YORK, Respond-
ENT, *v.* JAMES A. FLACK, WILLIAM L. FLACK and
JOSEPH MEEKS, Appellants.

*Whether, under admitted facts, a decree is fraudulent and void is a question for the*
*court — referee acting criminally by direction or consent of the court — conspiracy —*
*verdict of a jury not set aside because of the intrusion of a third party into the*
*jury-room — waiver.*

On the trial of an indictment, alleging that a husband and his confederates had
conspired together to obtain a divorce without the knowledge or consent of the
wife, there was no dispute as to the facts relating to the manner in which the
decree had been obtained, and the judge in charging the jury characterized
the decree of divorce as a fraudulent decree.

*Held,* that it was for the court to say whether the law had been contravened in the
procurement of the decree, in such wise as to render it fraudulent and void; and
if it was void because of fraud, the court was justified in so characterizing it.

It is no defense to a referee that acts committed by him, constituting forgery and
perjury on his part, were committed by the direction or with the consent of the
court.

A judge is utterly without jurisdiction to direct the performance of acts which
must necessarily result in the perpetration of a fraud upon the court, rendering
absolutely void all action had thereunder.

While a confederation to do an act innocent in itself does not become a criminal
act unless the act is done with knowledge that it is prohibited, yet where the
act to be done cannot be innocent the confederation and agreement to do it are
necessarily corrupt, and the only question in a case of the latter kind to be left

to the jury is whether there was a confederation to effect the result by unlawful means, the court necessarily being the judge as to whether the means were lawful or unlawful.

Where it appears that the verdict of a jury was in no manner affected by reason of the intrusion into the jury-room of a newspaper reporter without the knowledge of the jurors, and it is evident that no damage has resulted to the parties against whom the verdict was rendered, the verdict will not be set aside because of such action on the part of the reporter.

Where, with full knowledge of such facts, parties against whom the verdict is subsequently rendered permit the trial to go on and the jury to be sent back without objection on their part and ask that instructions be given to the jury on their behalf, such acts constitute a waiver of any objection to the verdict of the jury.

APPEAL by the defendants from a judgment and conviction of the crime of conspiracy, rendered against them by a Court of Oyer and Terminer held in and for the city and county of New York on the 31st day of March, 1890.

*Horace Russell*, for the appellants.

*J. W. Goff*, for the respondent.

VAN BRUNT, P. J. :

The questions presented upon this appeal arise entirely upon exceptions taken to the charge of the judge.

The appellants, together with one Joseph Meeks, were convicted of a conspiracy for the perversion of justice and of the due administration of the law, by procuring by unlawful means a decree of divorce. The indictment under which this conviction was had contained many counts, which, however, may be summarized as follows : First. A conspiracy to obtain a divorce without the knowledge and consent of the plaintiff therein ; secondly, a conspiracy to obtain a divorce by unlawful means.

Although a large number of exceptions to the charge of the learned judge who presided at the trial were taken, our attention has been called to the following only :

*First.* An exception to the statement of the court that "this judgment record" (referring to the decree of divorce), "is a record of a fraudulent divorce, that of that there can be no doubt whatever ; that it is unquestionably fraudulent."

*Second.* An exception to the following language of the court, contained in instructions to the jury, as to the duties of the referee

in the taking of the testimony of the witnesses in an action for divorce. "If the referee had done his duty, would she (referring to one of the witnesses) have said she first knew him fifteen years ago as Reynolds? She says now she never did."

*Third.* That the court erred in its charge that it was no excuse for Meeks if he performed the acts he did perform by the consent of Judge BOOKSTAVER.

Our attention is called to the following requests and exceptions in connection with this point: I ask your honor to charge that Judge BOOKSTAVER was the judge of the regularity of the proceedings and the sufficiency of the papers. The court so charged.

Mr. BIRD — I ask your honor to charge that if Judge BOOKSTAVER knew, when the papers were brought back to him, that the changes had been made in them as testified to by the defendant Meeks, that then this jury cannot find Mr. Meeks guilty.

The court declined so to charge; exception taken.

Mr. BIRD — I ask your honor to charge that it was in the power of Judge BOOKSTAVER verbally to direct changes of the character made here.

The COURT — I decline so to charge and charge the direct reverse.

Mr. BIRD — I except to that and to the qualification on behalf of each of the defendants. I ask your honor to charge the jury that Judge BOOKSTAVER, being the judge to whom the papers were presented, was the sole judge of the sufficiency of the proof.

The COURT — Yes.

Mr. BIRD — I ask your honor to charge that, if that is so, this record is not a fraudulent record.

The COURT — I decline so to charge.

Exception taken.

The counsel for Meeks then asked the court to charge that if Mr. Meeks did what he did, what he has sworn to upon this stand, upon the direction of Judge BOOKSTAVER, without any criminal connection with any other person, but simply obeyed the order of the judge who had competent jurisdiction over the case, he committed no crime whatever.

The COURT — "I charge the part which refers to his criminal act, but everything in relation to his having done it by the direction of Judge BOOKSTAVER I decline to charge."

The counsel then requested the court to charge that Judge BOOK-STAVER had exclusive power to give directions to Mr. Meeks, he being his referee.

The COURT — He had no authority to direct Mr. Meeks or any-body else to change, erase or make any alterations such as have been made here in that record, and if he did so, he himself was derelict in his duty.

The counsel excepted to the refusal of the charge as requested and to the qualification as charged. The counsel asked the court to charge that if the jury believe that Judge BOOKSTAVER gave Meeks a verbal order to have a change of attorneys made, and that Meeks effectuated that purpose as he has described upon the witness stand without any intent to commit a crime, and that Judge BOOKSTAVER was not imposed upon, but acted upon his own official judgment and upon the papers presented to him by Meeks, that then they must acquit the defendant Meeks.

The COURT — I decline to charge that. So far as the criminal intent is concerned, it is correct. Everything about Judge BOOKSTAVER's verbal order, etc., I decline to charge.

Exception was also taken to the following language in the charge: That "ignorance on the part of the defendants, or any of them, of the meaning of this statute cannot be a shield to them if you believe that they have committed the acts. If you believe, beyond a reasonable doubt, that they have committed the acts which constitute the offense as I have defined it to you, then they are guilty." And the court thereupon defined a criminal intent to be the doing of an unlawful act intending to do it, and that ignorance of the law has nothing to do with it.

The court was also asked to charge as follows, which it did:

That "mere concert is not conspiracy; persons who agree to do an act innocent in itself, in good faith, not by the use of criminal means, do not become conspirators because it turns out afterwards that the act was prohibited by statute."

The court was also asked to charge the jury, which it did, that the jury must not guess that there was a conspiracy, but that they could only find the same from the legal evidence of the witnesses proving the same beyond reasonable doubt.

The court also charged in the following language: "If, in stating

either conceded facts or the facts proved on one side and controverted upon the other, such facts as so stated seem to weigh one way or the other, pray do not consider me as commenting on such facts, expressing an opinion upon them." Also: "The two questions for you to determine are, first, whether the suit which resulted in this decree was fraudulently and falsely instituted. * * * Then the other question for your consideration is, was this fraudulent decree obtained by fraudulent means?" And, also: "Now, when I pronounce this a fraudulent decree I do not mean to characterize the conduct of the defendants, which I want to leave exclusively to you."

Again: "Now, the first question in this case, as you see, is whether the suit itself was falsely instituted, and that depends upon two considerations. The first is, of course, whether Mrs. Flack is to be credited in her statement that she did not authorize the suit to be brought for an actual divorce. This is a question exclusively for you, and concerning it I desire to express no opinion nor to affect your judgment in the least."

Also: "It will be for you to say, gentlemen, on the facts, whether these defendants are guilty of having obtained this decree of divorce by fraudulent or unlawful means. On that point it is proper to say that whether there was a genuine cause of action is not the question. The question is whether the law has been abused or perverted by practices which are fraudulent."

The court also charged that if the jury believed the defendant Meeks did all the acts testified to in the case without conspiring with the other defendants or anybody else, they must acquit him.

And again: "Now, gentlemen, apply the rules with regard to conspiracy which I have given you and the general principles of law which I have stated, and take all the evidence here which is before you, the uncontradicted and that which is in conflict, and look at the entire case in its length and breadth; I leave it for you then to say whether there is or is not any reasonable doubt of the guilt of these defendants. If there is any reasonable doubt as to the guilt of one of them, he is entitled to it. If there is such doubt as to all of them, they are all entitled to it. If there is no reasonable doubt as to the guilt of any of them, you should so declare by a verdict."

It will be noticed that all these exceptions really relate but to two subjects, viz., the characterization by the judge of the decree of

divorce which had been obtained as a fraudulent decree and to the definition given of a criminal intent.

It is urged upon the part of the appellants that by this charge the judge usurped the privileges and functions of the jury, and dictated to them, as matter of law, or as a matter of mixed law and fact, what should have been left to them to find as a matter of fact, or as a matter of mixed law and fact, under proper instructions as to the law from the court. And, as an enforcement of this proposition, it is also urged that one of the questions on the trial was whether the divorce was fraudulent; and that the determination of the question involved not only the acts of the defendants, but the intent which was to be inferred by the jury from these acts; that is, not only the physical but the inferential facts; that it was not enough to secure a conviction that certain unlawful acts were done, but those acts must have been done in pursuance of a conspiracy animated by a corrupt purpose to procure a fraudulent divorce.

We think that, upon a consideration of the case, it will be seen that the learned counsel for the defendants has mistaken the question upon which the jury was called upon to pass, and that the principal question on the trial was not whether the divorce which had been procured was fraudulent, but whether there had been a conspiracy upon the part of each of these defendants with some other person or persons for the purpose of procuring a divorce by unlawful means. It is undoubtedly true that in a criminal case the court has no power to charge the jury that the defendants are guilty; and for that reason, upon the trial of an indictment for homicide, it was held to be error for the court to charge that if they believed the evidence of certain witnesses the defendant was guilty of murder.

This was held to be error, because although the homicide might be established beyond question, yet it was for the jury to say whether the homicide had been committed with the intent to kill, which was a necessary ingredient of the crime of murder; and as intent is necessarily a mental operation, the existence of which can only be inferred from established words and acts, the jury alone could draw this inference. (*McKenna* v. *People,* 81 N. Y., 360.) So it was held that it was error in the case of a defendant indicted for burglary with intent to commit larceny for the court to charge that the evidence showed that the burglary had been committed, because,

although the evidence may have shown that there had been a breaking into the premises, it did not show that a burglary had been committed unless it showed a breaking into with intent to steal, the intent being a part of the definition of burglary; and for the reason already stated the jury alone could draw the inference of intent. (*People* v. *Marks*, 4 Park. Crim. R., 157.)

There is another class of cases in which the question of intent must necessarily be submitted to the jury, and that is where two or more persons are indicted for the crime of conspiracy it is not enough to prove them guilty to show that they have made an agreement to do an act innocent in itself, and that the act which was the object of the agreement was prohibited, but it must, in addition, be shown that the confederation was corrupt and that the agreement must have been entered into with an evil purpose, as distinguished from a purpose simply to do an act, innocent in itself, in ignorance of the prohibition. And it is said: " Persons who agree to do an act innocent in itself, in good faith, without the use of criminal means, are not converted into conspirators because it turns out that the act contemplated was prohibited by statute. The actual intention belongs to the definition of the offense, and must be shown to justify a conviction for conspiracy." In other words, a confederation to do an act innocent in itself does not become a criminal act unless the agreement to do the act is with knowledge that it is prohibited, because otherwise the confederation cannot be corrupt. (*People* v. *Powell*, 63 N. Y., 88.) But this rule has no application to a confederation to do acts which never, in themselves, can be innocent, and, therefore, the very confederation to do them makes the confederation corrupt; and the only question in a case of this description to be left to the jury is, whether there was a confederation to effect the result by unlawful means, the court necessarily being the judge as to whether the means were lawful or unlawful.

In the case at bar we find that the defendants were indicted for a conspiracy to procure a divorce by unlawful means. The learned judge in his charge to the jury gave the definition of a conspiracy as contained in the Penal Code, as follows : " If two or more persons conspire, either * * * falsely to institute or maintain an action

or special proceeding   \*   \*   \*   or to commit any act injurious to the public health, to public morals, or to trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws, each of them is guilty of a misdemeanor."

The court then called the attention of the jury to the fact that there are two kinds of conspiracy, one a conspiracy to do an unlawful act, unlawful in itself, even if the most righteous means are resorted to ; and, second, a conspiracy to perform a lawful act by unlawful means, and the jury were instructed that a combination for the accomplishment of unlawful acts by lawful means, or lawful acts by unlawful means, each constituted a conspiracy.

The attention of the jury was then called to the further fact that a conspiracy requires two or more persons to be involved in it, and that there are many acts which may be performed by one man with impunity, which two or more persons together cannot perform with impunity ; and that it is the essence of the conspiracy doctrine that there should be a combination of two or more ; and unless the jury could find a combination between each of these defendants with some other person to procure this default by unlawful means, there must be an acquittal. And in various parts of the charge the attention of the jury is specially called to the fact that if the acts which were testified to were done by any of these individuals without conspiring with the other defendants or anybody else, they were not guilty.

The evidence upon the part of Meeks shows, and this is the foundation of the judge's charge in reference to this matter, that this decree which the court pronounced to be a fraudulent decree was obtained substantially under the following circumstances, and upon the following papers : A summons and complaint had been served upon the defendant James A. Flack in a divorce proceeding and no answer had been put in. An application had been made for an order of reference, which had been granted. Certain proceedings, the irregularities in which it is not necessary to mention, were had before the referee named in the order, who made his report. The referee, Mr. Meeks, presented such report with a proposed decree to the judge of the court in which the action had been brought, and the judge objected to the entering of that decree, whereupon Meeks, by direction of the judge, as he claims, took all the papers, destroyed the original summons, substituted a new one

antedated, saw Wright put his name to it as plaintiff's attorney,. and prepared an affidavit of regularity which Wright swore to.. The previous attorney's name was erased from the complaint, and this was also signed by Wright. The affidavit of service of the original summons and complaint was attached to the new summons and complaint; a new order of reference was prepared, and a proposed decree; and all these papers were presented by Meeks without any service of the new summons within a few days after their creation to the judge of the court in which the previous action had been commenced, and a decree of divorce procured.

It appears from the record that it was claimed upon the trial that. these proceedings were irregularities, and it was to meet this argument on the part of the defendants that the learned judge charged the jury that these were not irregularities, because the court had never acquired jurisdiction, and that, because there was not a single paper in that record but which was false, therefore, as matter of law, the decree was fraudulent.

Upon the uncontradicted evidence given upon this trial the court would have been compelled to charge that this decree was void. There was no pretense that the summons upon which it had been. granted had ever been served. There was no pretense that Wright. had ever been authorized to appear as the plaintiff's attorney. There was no pretense but that the affidavit of the service of the summons. and complaint was false as attached to the summons and complaint upon which the decree was granted. There was no pretense but that the affidavit of regularity was false. There was no pretense but that the report of the referee was untrue in that no proceedings were taken before the referee subsequent to the order of reference contained in the judgment-roll. And it is clear that no body but the court could judge as to whether, under these circumstances, the court had ever acquired jurisdiction under the decree. But it is urged that, because the learned judge characterized the decree as. fraudulent and because fraud is always a mixed question of law and fact, therefore it was error.

If the decree was void, why was it void? Simply because of the fraudulent means used in its procurement; simply because there. was not a single paper in the whole roll which constituted the judgment-roll and which preceded the decree but was false and fraudu--

lent in law. And we repeat, who was to judge as to whether the law had been cheated and defrauded by the manner in which this decree had been obtained? Was it for the jury? There was no dispute as to these facts. Was it not, then, for the court to say whether the law had been contravened in the procurement of that decree rendering it fraudulent and void? If it was void because of fraud, we can see no reason why the court should not characterize its nothingness by the proper appellation.

The jury was expressly charged that even these facts did not make any of the defendants guilty of the offense charged in the indictment, because the court said, " whether this judgment and these proceedings were the result of a conspiracy entered into by these defendants is a question which if you (the jury) solve in favor of the people, you must so solve beyond what is called in law any reasonable doubt" before any one of them could be convicted; and the jury were expressly instructed that an individual accused of a crime is entitled to have it left to the jury to form their own conclusion upon the evidence, whether he has or has not committed the particular crime charged against him. It clearly was a duty imposed upon the court to instruct the jury as to whether the procedure, which was confessed to by the defendant Meeks, was a perversion of the law. The jury are not the judge of *both* the law and the facts. It was for the court to characterize the acts established as having been done by Meeks, and it was not for the jury to determine whether they were in accordance with the statute or not. And this is all that the court did in declaring that this decree was fraudulent because it was not founded upon a single honest paper, the defendant Meeks having full knowledge thereof.

The question of the intent with which these acts were done had no bearing upon the guilt or innocence of the defendants under the rule laid down in the case of *People* v. *Powell* (*supra*). It is only when the act done is innocent in itself that the intent with which it is done becomes material. We do not think, however, that any one will have the hardihood to claim that the manufacture of false papers and the procurement of a divorce thereon could, under these circumstances, be innocent acts; and, therefore, the charge of the court that the doing of the acts, intending to do them, showed a criminal intent was clearly correct, such acts being *mala in se*.

It is to be observed, however, that these exceptions have no rela-
tion whatever to the guilt of the defendant James A. Flack. The
jury were instructed that he was not connected, directly or indi-
rectly, with these fraudulent changes which took place after Wright
was consulted, and that the case against him depended upon the
manner in which this action was brought, charging adultery with
Susan F. Reynolds, and upon the acts done with reference to the
preparation of the evidence of the witnesses whose depositions.
appear attached to the referee's report; and the jury were instructed
that Meeks was not affected by this consideration, but by what.
happened after he went to Wright, and that the question of the
guilt of William L. Flack depended upon the consideration which.
the jury gave to the evidence as to his participation throughout in.
the divorce proceedings which were taken.

The learned judge was careful to distinguish between the parts
which the various defendants, who were then on trial before him,
took in the proceedings which culminated in the indictments under
which they were being tried; that there was no connection between
the acts done by Meeks and the defendant James A. Flack; that if
James A. Flack was guilty, his crime had been committed prior to
the time when the fraudulent acts of Meeks commenced; and that.
he had no connection whatever with those acts, and the connection
of the defendant William L. Flack with those subsequent proceed-
ings depended upon the weight which the jury gave to the evidence
produced before them.

It seems to be clear, therefore, that in the exceptions to the char-
acterization by the learned judge of this decree as fraudulent the.
defendant James A. Flack has no interest, and that only the defend-
ants William L. Flack and Meeks could possibly be affected by the
charge of the court in this respect, even if it were erroneous. But.
we think it has been clearly shown that the court had the right to
judge as to whether Meeks' procedure was lawful or unlawful, and as
to whether these proceedings were mere irregularities or frauds upon
the court; and that there was no question whatever for the jury upon.
this point; and it should be borne in mind, in the consideration of this.
question, that the court charged expressly that, although Meeks was
guilty of these unlawful acts in the procurement of this decree, if
he did it alone he was not guilty of the offense charged, but that.

it was necessary that the jury should find that he conspired with some other person for the attainment of this end by unlawful means, and thus was guilty of a conspiracy for the perversion of justice and of the due administration of the law. Again and again, throughout the charge, did the court call the attention of the jury to the necessity of finding a combination between the defendants and some other person or persons to do these acts before a conviction could follow. If it was a fraud upon the court to procure a decree of divorce upon papers, every one of which was stamped with confessed dishonesty, then the learned judge would be derelict in his duty to the people by characterizing them otherwise than he has done. In law, at least, fraudulent means can never culminate in honest results.

This brings us to the consideration of the claim that the learned judge erred in his commentaries upon the manner in which Meeks performed his duties as a referee. We can see no error in the charge of the court in that respect. The court was bound to instruct the jury as to what was the regular method of proceeding.

It is urged that in the charge the court assumed that one of the witnesses told the truth upon the stand and did not tell the truth in the deposition taken before Meeks; that this was an inference of fact, and it should not have been charged that the witness told the truth on the stand and that a different state of facts would have been elicited by Meeks if he had conducted an examination.

No such question is raised by the exception to this portion of the charge, and the attention of the court was not called by anything that was said to this particular language which was used. But we think that the interpretation placed upon the language by the counsel for the appellant is not correct, upon reading the paragraph in full.

It was established by uncontradicted evidence that the depositions as sworn to before Meeks, as referee, did not contain the truth, and it was because of this fact that the court probably used the language to which attention is now called. All that was intended to be presented to the jury was whether the referee, upon proper examination, would have secured the facts as the witness told them upon the stand, which is evidenced by the next sentence in the charge. "If the referee had elicited that fact by an examination of the

witness," etc., clearly leaving the matter wholly open.   If the attention of the court had been called to the use of the word "truth" by any properly directed exception, the language would undoubtedly have been changed, as there was no intention exhibited upon the part of the court to usurp the province of the jury in this respect, as the jury were again and again instructed that they were to be the judges of the facts, and not the court, so far as they depended upon the evidence of the witnesses.

The next error claimed is that the court erred in its charge that it was no excuse for Meeks if he performed the acts which he did perform by the consent of Judge BOOKSTAVER, or under his direction. In support of this proposition our attention is called to the *People* v. *Crounse* (51 Hun, 489), where a party was indicted and convicted of maintaining a public nuisance in constructing an embankment upon private land, thereby causing surface water to flow upon the public highway.   The defendant undertook to give evidence showing that the act done by him was done by the direction of the commissioners of highways, and the court held that it was competent evidence, basing their decision upon the fact that, although the commissioners of highways might fail in judgment, the act having been done pursuant to their directions, could not be punished criminally.

We fail to see the application of this case to the facts established in the case at bar.   Judge BOOKSTAVER had no right to direct Meeks to commit acts which, under no circumstances, could be other than criminal.   Judge BOOKSTAVER had no power to direct the commission of forgery and perjury upon which to found a decree, so as to shield the party following the direction from the consequences of his acts.   In the case cited there was a mere error of judgment on the part of the commissioner of highways.   He had a right to direct the act to be done, provided it was done without public injury, and, therefore, the defendant in the case cited, if acting under such authority, did not act unlawfully, and hence his action would not come within the terms of the Penal Code.   But Judge BOOKSTAVER, if he did so direct, had no power to direct the commission of acts which would result in the perpetration of a fraud upon the court. It is to be borne in mind, as the learned judge charged the jury, that the judge is not the court; that he is the mere servant and

administrator of the law, and that the judges are the servants of the people to perform their duties in accordance with the law ; and that a judge is utterly without jurisdiction to direct the performance of acts which must necessarily result in the perpetration of a fraud upon the court, and rendering absolutely void all action had thereon. Such a case is not the case of an error of judgment. It is a case of the perversion of judgment.

The only other exception which appears upon the counsel's brief is one which is not argued at length, and it is to the effect that the court erred in denying a motion for a new trial, based upon the intrusion of a World reporter into the jury-room during their deliberations.

It appearing in the record of this case, from the affidavits of the jurors, that their judgment was in no manner affected by reason of the intrusion of this man without their knowledge into the jury-room, it is evident that the defendants have sustained no damage, and consequently the verdict cannot be set aside upon that ground.

But it is also clear that whatever rights the defendants may have had by reason of the happening of this incident, they were waived by the subsequent conduct of the defendants and their counsel.

After they had full knowledge of the facts they permitted the trial to go on and the jury to be sent back without objection, and asked the court to give instructions to the jury on their behalf, the refusal to give some of which forms one of the grounds upon which this appeal is founded.

Under such circumstances, the defendants cannot now be heard to claim immunity because of this alleged irregularity. They had their opportunity to object to the sending back of this jury. They did not, and they cannot now be allowed to assume the position of speculating upon the verdict of the jury ; if it was in their favor, they would be discharged ; if against them, it would be set aside.

An examination of the whole case shows that the learned judge presiding at the trial in no manner usurped the functions of the jury. He repeatedly told the jury that the guilt or innocence of the defendants was a question exclusively for them to determine, and in respect to which he did not wish or intend to influence their judgment. Where conceded acts were frauds upon the court because wholly unlawful, he so characterized them, as he was bound to do, and it was for him alone so to do. As has already been said,

it was not the province of the jury to determine whether an established act was lawful or unlawful. Such question is one of law exclusively for the court.

There do not appear to be any errors which would justify a reversal of the judgment, and it should be affirmed.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed.