THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RAYMOND O'KEEFE, ANTONIO ROMEO, LOUIS DIMBRO, JOSEPH BANOVIC, Alias '' BINGO JOE '', KEISER JOSEPH, Alias '' MUSHY KEISER '', DEMETRIUS SARACENO, SIDNEY GOODSITE, Alias '' SHIMMY '', MARTIN MONDOLFI, LOUIS FIATO, and JOSEPH CAPALACES, Appellants, et al., Defendants.

Third Department, September 17, 1952.

*Travis & Whiting* for Sidney Goodsite, Martin Mondolfi and Keiser Joseph, appellants.

*R. J. & P. R. Shanahan* for Antonio Romeo, appellant.

*John J. Cucci* for Louis Dimbro and Louis Fiato, appellants.

*Theodore H. Cohn* for Demetrius Saraceno and Joseph Capalaces, appellants.

*Mangan* and *Mangan* and *John H. McKenney* for Joseph Banovic, appellant.

*John LoPinto* for Raymond O'Keefe, appellant.

*Robert E. Fischer, District Attorney (Samuel W. Bernstein,* and *Louis M. Greenblott,* of counsel), for respondent.

BREWSTER, J. The judgments appealed from stem from a Broome County Court Grand Jury investigation into the conduct of various members of the police department of the city of Binghamton and divers persons charged with various illegal gambling activities. It resulted in an indictment which occupies 341 pages of the record on appeal, and of wide scope as to the number and particulars of offenses charged and persons accused. The crimes charged were: two counts for the misdemeanor of conspiracy, in violation of subdivisions 1 and 6 of section 580 of the Penal Law, and one hundred counts for the felonies of bribery and as to an officer taking unlawful fees in violation of sections 372 and 1826 of the Penal Law, respectively. Therein eighteen persons, the defendants-appellants, and eight others were accused. The trial continued over a period of nearly twelve weeks. In the beginning the indictment was severed as to two defendants who later testified for the prosecution, and some thirty-six counts were dismissed as to all defendants on motion by the prosecution. At the close of the People's evidence many more of the counts were dismissed for failure of proof, in some instances as to some defendants and in others, which related to fifty counts, as to all who were therein accused, with the result that the issues which were sent to the jury were those which arose from: (a) the two misdemeanor counts, the first of which accused thirteen defendants, including all defendants-appellants, and the other, five defendants, (b) felony counts Nos. 3 and 4 as charged against two of the defendants therein accused, (c) felony counts Nos. 5 to 12 inclusive, and Nos. 57 and 58 as charged against defendant-appellant O'Keefe, and (d) felony counts Nos. 59 and 60 as charged against O'Keefe and another. The action of

the jury was: (a) to acquit all of said defendants as to the second conspiracy count (Penal Law, § 580, subd. 1), and three of them as to the other one (subd. 6), as to which latter they found all of the defendants-appellants guilty, (b) to acquit said defendants accused by counts Nos. 3 and 4, (c) to convict defendant-appellant O'Keefe on counts Nos. 5 to 12 inclusive, and Nos. 57 and 58, and (d) to acquit said defendants accused by counts Nos. 59 and 60.

Of the several grounds upon which appellants seek a reversal we deem but two of them to here merit our consideration. These have to do with (1) the Trial Judge's ex parte interview with a trial juror respecting her qualifications after she had been accepted a day or so previously but before the impaneling of the jury had been completed, and another ex parte communication he sent to them during a later stage of the trial and (2) the reception into evidence and use made of typewritten transcriptions of certain records of intercepted telephone conversations.

The record discloses that some few days after the trial began and when four trial jurors had been accepted the Judge called one of them, a Mrs. Whiting, juror No. 4, to his chambers and inquired of her somewhat at length concerning her qualifications in the light of various statements about her set forth in an affidavit or affidavits which had been furnished to him. While the actual and full contents of the affidavits have not been shown, the record discloses that the statements therein raised a grave question in the Judge's mind as to her qualifications. It is conceded that the inquiry was wholly ex parte as regards the defendants although the Judge apprised defendants' counsel of the incident after it had taken place and discussed the matter with them at some length, among other things, suggesting that they consent to excuse her. The juror Whiting continued as such and participated in the verdicts. The record further discloses that some days later, during the presentation of evidence, the jurors or some of them were anxious to learn whether the disk records of intercepted telephone conversations, received in evidence, would be available to them during their deliberations. The foreman of the jury took this inquiry to the Trial Judge in his chambers and received a negative reply. The subject matter of the inquiry did not otherwise arise during the trial. The information or instruction as thus communicated to the jury was without the knowledge or consent of the defendants or their counsel, as was the Judge's questioning of juror Whiting.

The impaneling of the trial jury is a part of the trial. (*Maurer* v. *People,* 43 N. Y. 1.) The ex parte inquiry into the qualifications of juror Whiting as disclosed by the record was wholly unauthorized. However well intentioned and inadvertently brought about it amounted to the conduct of a material part of the trial in the absence of the defendants and without their knowledge or consent, and' thus was beyond the pale of jurisdiction. (Code Crim. Pro. § 356; *Maurer* v. *People, supra; People ex rel. Flaherty* v. *Neilsen,* 22 Hun 1.)

The requirement of a defendant's presence during his trial for a felony, whatever the cause of its ancient origin, has long been regarded as a necessary safeguard to his substantial and jealously protected right to a fair trial. Its absoluteness has only been relaxed in modern times in instances of rather minute departures but then only in the case of the allowance of a waiver by the accused when made " with full knowledge of what has occurred and it is evident that the defendant has suffered no prejudice." (*People* v. *La Barbera,* 274 N. Y. 339, 344; see, also, *People* v. *Bragle,* 88 N. Y. 585, 590.) The predicament here is not relieved by any sufficient showing of nonprejudice to the defendants or by any waiver by them or by the failure of a motion for a mistrial as to which it is idle to speculate as to the ruling had one been made. The argument that defendants' nonaction regarding the incident, or the trial tactics of their counsel, amounts to a waiver which may now be implied, and as such allowed, seems untenable. The record fails to show that the defendants themselves had knowledge of the occurrence of the incident and, of course, neither they nor their counsel could have known precisely what had transpired thereat or the effect of it on the mind of the juror who had been duly selected. It would seem to be going too far to now, by the doctrine of implication, force upon them the waiver of a transaction of which they did not have full knowledge.

The instruction or information imparted to the jury in answer to their inquiry communicated by the foreman, was also unauthorized. So far as the record discloses what took place regarding this matter seems trivial in its factual importance. But it has gravity in that it was a violation of the defendants' rights and prescribed trial practice which has been long established to protect those rights. This court recently reversed a judgment of conviction for a like error in *People* v. *Hallock* (267 App. Div. 1030). (See, also, *People* v. *Migliori,* 269 App. Div. 996.) It seems quite impossible to safely define or limit the extent to which a trial judge's ex parte, and off the record

instructions to a jury regarding any matter germane to the case on trial before it, may be countenanced.

The difficulty of overlooking the incidents in question as harmless or technical errors (Code Crim. Pro. § 542) is that to do so would set a precedent for the tolerance of material parts of a trial in camera, and thus the avoidance of long-established rules for the conduct of criminal trials which are designed for the protection of the substantial rights of the accused. Such being their basic purpose they are not to be endangered by the erosion of exceptions, even where their enforcement may seem harsh on the prosecution and to favor the guilty. The importance of preserving them in their historic integrity rises above the outcome of the given case. Their positive and material violation, in the absence of allowable waiver, clearly shown, in and of itself affects the substantial rights of the accused, is prejudicial, makes the trial unfair and calls for a reversal.

Much of the People's evidence consisted of a great number of lawfully intercepted telephone conversations between divers of the defendants. These had been mechanically recorded on disks which were received in evidence and played to the jury. In many instances the records were so indistinct and jumbled in their reproduction that they were unintelligible except by being played back until the listener's auditory senses would enable him to grasp an interpretation or understanding of the recorded talks. Typewritten transcriptions of these had been made by a stenographer from stenographic notes made as she listened to them and their playbacks. Copies of these transcriptions were furnished to the court and defendants' counsel and, over the latter's objection, to each member of the jury. No proof was given or offered as to the accuracy or reliability of the transcripts. Although offered and received in evidence over defendants' objection and exception the court instructed the jury that they were not evidence or to be considered as evidence of the recorded conversation but were to be used by them as an aid to their understanding of them when reproduced, and, as the indistinct records were played to the jury they were so employed. We think this constituted error. (*People* v. *Betts,* 272 App. Div. 737, affd. 297 N. Y. 1000.) Even though technically not received or considered as real evidence the use made of them under the circumstances could have but caused them to function as evidence. If the jurors were unable to understand what was reproduced it is but natural that they, or at least some of them, relied upon the typewritten transcripts which so far as shown were some unknown person's interpretation as typewritten from

stenographic notes. Although the indistinctly recorded conversations seem largely cumulative we cannot say they were wholly so, and thus overlook this matter as mere technical error.

Amid the mass of proofs presented by the People we find ample to sustain the verdicts upon which the judgments appealed from were rendered. The trial was a protracted and difficult one. It was made so by a single indictment's accusation of so many persons of so many instances of the commission of the various offenses charged. The difficulty was not lessened by the dismissal of the large number of counts because of the resultant necessity of segregation and application of the evidence to the issues finally submitted. For the errors heretofore assigned there should be a new trial.

The judgments should be reversed on the law and a new trial ordered.

BERGAN, J. (dissenting). During the course of selecting the jury the Trial Judge called into his office the juror Whiting who had been accepted by both sides and had been individually sworn.

He told her that he had an affidavit relating to her qualifications as a juror and that he had learned she knew a tenant in a building owned by a defendant; that the tenant had introduced her to the wife of this defendant; and that she herself had once lived in that building.

This inquiry was not in the presence of the defendants or their counsel; but counsel were promptly informed about what had occurred. The Judge had been advised by the District Attorney that he intended to challenge the juror for cause.

The Judge consulted counsel for the defendants about consenting to excusing the juror; but the record does not show that he suggested they consent to it. The affidavit of Mr. Shanahan states that the Judge suggested that counsel " give consideration to the matter of consenting " to the excuse which is quite a different thing. Counsel in their conversation with the Judge " pointed out " to him that they " were of the impression " that his talk with the juror in the absence of the defendants and their counsel " was decidedly improper " and in effect added they would not consent to her being excused.

The Judge stated that he would give the defendants an additional peremptory challenge to " compensate them " for any loss in the matter of peremptory challenges. Later the same day the Judge advised counsel that the District Attorney had decided not to press the challenge for cause against the juror.

Thus the situation was allowed to rest and counsel for the defendants did nothing about it. They neither objected on the record nor asked that the juror be excused in the light of her interview with the Judge; nor did they ask to be allowed to examine her further; nor did they move for a mistrial.

When, some days later, the jury had been selected and agreed to by both sides with the juror Whiting still a member of it counsel made an astute observation on the record. They said they would like to "reserve" their right until the close of the trial "to make any motion in that regard" so that there could be "no claim" in the future that "we have made any waiver of any rights".

Counsel who now press on us what they regard as a serious invasion of the defendants' legal rights in respect of the Judge's ex parte conversation with the juror did not then ask for any relief on the record, made no motion for a mistrial or the discharge of the jury, the independence of which they argue here was somehow affected by what the Judge had done. If the course suggested by defendants' counsel is sound they would have the benefit of finding out first what the verdict would be before they pressed their objection to the selection of the jury.

It seems elementary law that if defendants deemed themselves injured by what the Judge had done they were required to say so on the record and a general reservation of rights carried silently through an entire trial will not protect them. They were bound to seek relief in one of the appropriate methods available to them or they were deemed to have waived it.

The main question on this appeal is whether the error attributed to the Judge was so serious an invasion of the legal rights of the accused that as a matter of judicial policy they could not have waived it by continuing on silently in the trial with full knowledge of the facts; because if they were able to waive the objection to the Judge's course of procedure they certainly have done so.

The argument of the appellants is that the impaneling of the jury was "part of the trial"; that hence the presence of the defendants was so necessary at all "parts of the trial" that the discussion between Judge and juror of the juror's qualifications in the absence of defendants was such a serious thing that even if quite willing to ignore or waive it, they could not do so because of the transcendent importance of their right to be personally present at "all parts" of the trial.

The legal argument thus constructed hangs on the authority of *Mauer* v. *People* (43 N. Y. 1) decided in 1870. In that case the defendant was being tried for murder. After the jury began its deliberations it returned to the courtroom and asked the Judge some questions as to dates and some other data given in the testimony. The defendant was not in court, but counsel was there and made no objection to the proceedings had without the defendant and took no exception to the procedure followed.

The Court of Appeals held, per GROVER, J., that the presence of the accused was necessary during these additional instructions to the jury; that this was " during such trial " within the statute; and that this was the kind of error which could not be waived.

JUDGE GROVER added by way of illustration that the impaneling of the jury also was to be regarded as " during such trial " (p. 3), but that question, of course, was not before the court and was not decisive of the case. Twelve years later the Court of Appeals in *People* v. *Bragle* (88 N. Y. 585), in distinguishing *Maurer* v. *People,* stated that the " very broad rule " there laid down found justification in the character of the facts that had been before the court, and in effect limited the decision to those facts (p. 590).

There are two important reasons why the implications of the *dictum* in *Maurer* v. *People* that the absence of the accused during any part of the proceedings for impaneling of the jury is so fundamentally erroneous that it cannot be waived or consented to is not controlling authority to require reversal of the judgments now before us.

The first is that the Court of Appeals has enlarged the scope of the permissible waiver of absence of the accused in non-capital cases and has permitted the waiver of that right in portions of trials for such offenses. The leading authority is *People* v. *La Barbera* (274 N. Y. 339 [1937]). There the accused was charged with arson. During its deliberations the jury asked that certain additional testimony be read. It was read in the absence of the accused.

A juror asked a question in respect of the matter that was being read and the Judge answered the question. It was then discovered that the accused was not present and he was brought into the court. Counsel waived the rereading of the testimony in the presence of the accused and consented that its being read in defendant's absence " be with the same force and effect " as if he had been present (p. 342). Nothing seems to have been said about the Judge's answer to the juror's question concerning

the evidence, but in the Appellate Division's opinion (249 App. Div. 254) it is stated that counsel had " waived any error which might have occurred ".

The Appellate Division reversed the judgment of conviction expressly on the authority of *Maurer* v. *People* which, as it has been seen, was very closely similar in its facts. The Court of Appeals, however, held that this case was " not in point " because it " involved a charge of murder " (p. 344). " In the case of felonies not punishable by death, the rule of law is different." (P. 343.)

It was held squarely that the right to be present when the testimony was read and when the Judge answered the jury's question could be waived. Some of the language has very broad implications which seem to authorize almost unlimited procedural waivers in criminal cases (p. 344), but it is unnecessary to carry the effect of the decision further for our present purposes than the exact question there decided.

The growth of the New York doctrine of waiver of procedural rights in criminal cases was traced (p. 343). One of the cases considered in this developing process was *People* v. *Bragle* (*supra*) which is an interesting authority on its own account. The accused was charged with wrongfully attempting to obtain public moneys. During the trial defendant left the courtroom over the objection of the District Attorney to make a telephone call while the cross-examination of a witness by his own counsel continued. He was gone for about five minutes.

The trial went on in his absence and it was held that his right to be present during its continuance could be waived. (See the evaluation of this decision in *People* v. *La Barbera* at page 343.) The waiver of the right to confrontation of an accused by a witness in a noncapital case was sustained in *People* v. *Sugarman* (248 N. Y. 255). And this, of course, related to a constitutional and not merely a statutory protection.

The second reason why *Maurer* v. *People* is not authority requiring the reversal of the judgments on this appeal for an error during the selection of the jury is that in the present New York criminal practice, defects or irregularities in the organization of a jury are deemed immaterial when there is present and sworn a competent and lawful jury and the accused is not shown to be prejudiced.

The leading decision on the subject is a capital case, *People* v. *Cosmo* (205 N. Y. 91 [1912]). There a juror, legally disqualified in respect of property ownership, was accepted and participated in the verdict and it was held that his disqualification was

waived by defendant when he was accepted for the jury, even though it was not suggested that his disqualification was then known to the defendant.

In *People* v. *Decker* (157 N. Y. 186) there was, during the impaneling of the jury, a heated discussion between the court and a juror over a point of law at the end of which the Judge stated that the views of the juror were unjustified and he discharged him on challenge by the People. Another juror had been peremptorily discharged without challenge by either party. The court was of opinion this was not ground for reversal because there was no substantial right affected and when the jury was complete the accused still had a number of peremptory challenges and " No juror was permitted to sit to whom the defendants made any substantial objection ". (Pp. 192, 193.) There were " culpable irregularities " in *Ferris* v. *People* (35 N. Y. 125, 129), which were held not to have affected the rights of the accused.

A number of irregularities in the drawing of the panel were demonstrated in *Cox* v. *People* (80 N. Y. 500), but the court ruled that the existence of such irregularities was not a ground for reversal unless there also appeared that there was injury to the prisoner (p. 511). And this, indeed, is the modern view of the Court of Appeals. See opinion of FROESSEL, J., in *People* v. *Kruger* (302 N. Y. 447, 450 [1951]).

During the course of the trial in the case now at bar the foreman of the jury at the request of some of the jury called on the Trial Judge in his chambers to ask whether the exhibits would be sent to the juryroom during their deliberations and the Judge said that because of their number it probably would not be feasible to have all the exhibits in the juryroom and that if they wanted exhibits they should ask for what they required. It has not been demonstrated that this error was prejudicial and it also must be deemed to have been waived by defendants.

Counsel knew of this incident immediately after it happened, questioned the Judge concerning it and were told the facts. They took no exception; they asked for no further statement or instructions to the jury; they did not move for a mistrial. They let the case go to the jury and allowed a verdict to be returned without any indication that they dissented from the procedure taken by the Judge or that they wanted to remedy it.

They made no application to send any of the exhibits to the jury; and with full knowledge of what the jury had asked and what the Judge had said to the foreman, they nevertheless indicated in the language of the affidavit of Mr. Shanahan that

they "would prefer to await any request of the jury for exhibits before indicating their consent or opposition to the same going into the jury room ".

If the invasion of the defendants' rights had been as serious as counsel now argue on appeal, this was a fairly equivocal treatment of the subject, and is consistent with the strategy adopted in respect of the Judge's conference with the juror Whiting. There can be no doubt that the conduct of counsel after they had full knowledge constituted a waiver and that it was the kind of a procedural objection that could be waived under the authorities that have been considered.

This aspect of the question is somewhat similar in principle, although not fully analogous, to the jury's view of the scene of a crime in the absence of the defendant which the court held in *People* v. *Thorn* (156 N. Y. 286) could be waived even in a capital case; and to the written portions of the Judge's charge sent into the juryroom without objection by defendant's counsel considered in *People* v. *Monat* (200 N. Y. 308, 313), also a capital case.

An unlawful intrusion of a newspaper reporter into the juryroom without the knowledge of the jurors was the kind of an irregularity which was deemed waived when counsel by not objecting allowed the jury to be sent back to deliberate on further instructions, after knowledge of the intrusion had been acquired. (*People* v. *Flack,* 57 Hun 83, 96.)

The decision in *People* v. *Griffin* (273 App. Div. 939) stands on rather singular ground of its own. The jury had separated without authority and the court conducted an investigation into the cause of the separation "in the absence of the defendant ". The Appellate Division was of opinion that no error prejudicial to the defendant resulted, and while the judgment was reversed (298 N. Y. 529) this was because the Court of Appeals felt the guilt of defendant was not established beyond a reasonable doubt. " We pass on no other question."

Not the slightest prejudice has been shown here in the asking or answering of the question about the availability of exhibits which related not at all to the merits of the case but to the procedure to be followed on the trial.

The transcripts of the wire-tap recordings were in aid of the jury's senses; they were in the general class of maps or photographs; they related to a question of corroboration otherwise overwhelmingly proved in the record; there is not the slightest proof of their inaccuracy. There were ample procedural facilities open to appellants to have impeached them; and if their

being given to the jury was error it was the kind of error which we are required by the statute authorizing this appeal to disregard.

The judgments should be affirmed.

HEFFERNAN and COON, JJ., concur with BREWSTER, J.; BERGAN, J., dissents, in an opinion, in which FOSTER P. J., concurs.

Judgments reversed, on the law, and a new trial ordered.

This court has reviewed the facts and is satisfied with the conviction in that respect, and except for the assigned errors of law would not reverse the conviction. [See 281 App. Div. 774.]