THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. RAYMOND O'KEEFE, ANTONIO ROMEO, LOUIS DIMBRO, JOSEPH BANOVIC, Alias " BINGO JOE ", KEISER JOSEPH, Alias " MUSHY KEISER ", DEMETRIUS SARACENO, SIDNEY GOODSITE, Alias " SHIMMY ", MARTIN MONDOLFI, LOUIS FIATO and JOSEPH CAPALACES, Appellants, et al., Defendants.

Third Department, March 11, 1953.

*Harry S. Travis* for Sidney Goodsite, Martin Mondolfi and Keiser Joseph, appellants.

*Paul R. Shanahan* for Antonio Romeo, appellant.

*John J. Cucci* for Louis Dimbro and Louis Fiato, appellants.

*Theodore H. Cohn* for Demetrius Saraceno and Joseph Capalaces, appellants.

*John H. McKinney* for Joseph Banovic, appellant.

*John Lo Pinto* for Raymond O'Keefe, appellant.

*Robert E. Fischer, District Attorney (Louis Greenblott* of counsel), for respondent.

HALPERN, J. This case is before the court for decision after reargument upon a corrected record.

On September 17, 1952, this court reversed the judgments of conviction by a vote of three to two. (280 App. Div. 546.) Thereafter on November 6, 1952, upon the application of the appellants, the Trial Judge ordered that there be added to the printed record certain statements by counsel and the court which had been omitted by error of the printer. Also, upon the application of the respondent the Trial Judge ordered that there be added to the record certain testimony which had been omitted by a stipulation into which the District Attorney

had entered at the request of the appellants upon the representation that the omitted matter did not have any material bearing upon any point which the appellants intended to raise upon the appeal.

On January 7, 1953, on the motion of the respondent, this court ordered a reargument upon the corrected record. (281 App. Div. 774.)

One of the grounds upon which the judgments had been reversed has been completely obviated by the testimony which has been added to the record. The testimony meets the objection that there was no proof as to the accuracy of the type-written transcripts which were used upon the trial as an aid to the understanding of the wire-tap recordings. It now appears that there was sufficient proof of the accuracy and reliability of the transcripts to authorize their use upon the trial.

The statements by counsel and the Trial Judge which were added to the record on the appellants' application bear upon the other principal ground upon which the majority of the court based its reversal, namely, the private conversation between the Trial Judge and one of the jurors. The added material consists of the following: After the purported reservation of rights by counsel which appeared in the original printed record, it now appears that there was a response by the Trial Judge as follows: " All such rights are reserved until close of the trial ". There followed a further statement by another of the defendants' counsel, repeating the request that the so-called reservation be noted in the minutes, and the Judge replied: " That's correct ".

We have reviewed the entire record, including the added matter, and we have come to the conclusion that there is no ground for reversal of the judgments of conviction.

Integrating the new matter into the original record, we find that this is what occurred:

Information had apparently been brought to the Trial Judge indicating that Mrs. Whiting, who had been accepted as juror No. 4, might possibly be disqualified as a juror. In the language of the Trial Judge: " Before the selection of the jury was completed, but after juror number four was accepted and sworn, two affidavits were filed with the Court which indicated that there might be grounds for challenge for cause because of an acquaintance which had not previously been disclosed, and also that there might have been an improper communication between one of defense counsel and a member of the Jury Panel."

The Judge called Mrs. Whiting into his office while the court was not in session, to determine whether there was sufficient merit in the information which had reached him to warrant a public inquiry into the matter. This took place before 10:00 A.M. on March 19, 1951. The Judge told Mrs. Whiting that he had an affidavit relating to her qualifications as a juror; that he had learned that she knew a tenant in a building owned by a defendant; that the tenant had introduced her to the wife of this defendant; and that she herself had once lived in that building.

After his conversation with the juror, the Judge advised the defendants' counsel of what had occurred and, according to the affidavit of Mr. Shanahan, the attorney for one of the defendants, he indicated that upon the basis of the information he had received, there was " considerable doubt as to whether Mrs. Whiting should be permitted to continue as a juror in this case " and that he had been advised by the District Attorney that it was his intention " to request that Mrs. Whiting be excused for cause under the provisions of Section 371 of the Code of Criminal Procedure which permitted such a course even after the juror was accepted and sworn, if in the discretion of the Court such action was warranted." The Judge pointed out this " would result in a trial, in open Court, of the challenge for cause, and that he felt that such a course should be avoided, if it were possible to do so." The Judge " then suggested that the defendants' Attorneys give consideration to the matter of consenting that Mrs. Whiting be excused as a juror in view of the information at that time before the Court." After conferring with their clients, the defendants' counsel advised the Judge that they declined to consent to the excuse of the juror, although the Judge offered to add an additional peremptory challenge to the number of challenges then remaining if they agreed to the excuse of the juror.

Later on the same day, the District Attorney advised the Judge that he had decided not to press the challenge for cause and the Judge so advised the defendants' counsel. That was the end of the matter at that time. The defendants' counsel did not ask that the juror be excused because of any alleged prejudicial effect of the private interview by the Judge, nor did they ask to be allowed to examine Mrs. Whiting further, nor did they move for a mistrial or for any other relief. The selection of the jury proceeded; the jury was completed by the acceptance of the twelfth juror and of two. alternate jurors on March 20, 1951.

Several days later, on March 26, 1951, before the opening addresses to the jury were made, counsel for the defendants entered upon the record the following statement: " we would like to simply reserve further our right to make any motion that may be appropriate with reference to the transaction wherein your Honor discussed with the Juror Whiting certain matters concerning her qualifications at a time when none of us were present or had any notice of it. We would like to reserve our right until the close of the trial to make any motion in that regard. We specifically asked to have our reservation noted on the record, however, so that there could be no claim in the future that we had made any waiver of any rights that we might have in that regard."

As appears from the corrected record, the Trial Judge responded: " All such rights are reserved until close of the trial."

Notwithstanding this response, it seems to us that the reservation was of no effect. It is of the essence of the defendants' claim that the interview by the Trial Judge prejudiced the mind of the juror and impaired her freedom of decision. As we understand the defendants' claim, it is that, as a result of the interview, the juror was made to feel that she was under suspicion of being friendly to the defendants and that therefore she might lean over backwards and decide against them, in an effort to demonstrate that the suspicion was unfounded. This amounts to saying that the defendants believed that the juror would not be a fair juror and that she had been so affected by the episode that she could not " try the issue impartially and without prejudice to the substantial rights " of the defendants (Code Crim. Pro., § 376). The defendants nevertheless refused to consent to the juror's being excused by the court and they made no request for her excuse after the prosecution announced that it would not press any challenge. On the contrary, with full knowledge of the episode, the defendants elected to retain the juror and to accept the whole jury of which she was a part and to proceed with the trial. Having made this election, there was nothing left which the defendants could reserve as the basis for an attack at the close of the trial. If it was the defendants' claim that, as a result of the episode, the juror was disqualified or unfit, it was their duty to present that claim then and there, at that stage of the proceedings. They could not by any reservation preserve the objection for use at a later stage.

" A new trial will not be granted on the ground that a juror was liable to be challenged, if the party had an opportunity of making his challenge, and knew, or might have known, in the exercise of due care, the facts beforehand." (3 Wharton on Criminal Procedure [10th ed.], § 1785.)

" It is also settled, as we have already seen, that objections to the competency of jurors, on the ground of preadjudication, must be taken before empaneling, or at the time when the party becomes first acquainted with the objection." (3 Wharton on Criminal Procedure [10th ed.], § 1830.)

In *People* v. *Cosmo* (205 N. Y. 91, 101) the Court of Appeals quoted the settled rule from Thompson on Trials (§ 114) as follows: " ' A known cause of challenge is always waived by withholding it, and raising it as an objection after verdict; since such a practice is incompatible with the good faith and dealing which should characterize the administration of justice. Therefore, in order to make an objection to a juror available after verdict, the objecting party must prove that it was unknown to him, and that it would not have been disclosed to him by a proper inquiry before the jury was sworn.' "

The court's acquiescence in the " reservation " by the defendants' counsel did not alter the situation. The defendants reserved only such rights as they " might have " with respect to the juror episode. At the time that the statement was made, the defendants had no rights " in that regard ". Having elected to retain the juror, after having been fully advised the facts, they no longer had any right to object to her presence on the jury. Furthermore, the reservation was limited to an " appropriate " motion at the " close of the trial ". No motion upon the basis of the juror episode was made at the close of the trial; obviously, the defendants did not wish to have any action taken by the court before the jury reported its verdict; they wanted to save the point as a trump card to be used on a motion for a new trial after verdict, in the event that the verdict went against them. Such a maneuver was clearly not within the scope of the language of the reservation or of the court's acquiescence in it. If the defendants had the idea that by any ingenious device they could manage to have their cake and eat it too, they harbored an illusion and no acquiescence by the court could give it reality.

As we analyze the case, no problem arises under section 356 of the Code of Criminal Procedure providing that " the defendant must be personally present " upon a felony trial. The

preliminary inquiry by the Judge, even though we assume that it was improper, was not in a legal sense a part of the trial. It was a preliminary inquiry for the purpose of determining whether the matter ought to be made the subject of a formal inquiry which would be a part of the trial. It will be noted that in his purported reservation of rights, the defendants' counsel did not make any claim that a part of the trial had been held in the absence of the defendants but claimed rather that a "transaction" had occurred between the Judge and the juror upon the basis of which he might want to make an "appropriate" motion. The "transaction" was not reflected in the proceedings in court, except as it may have affected the qualification or fitness of the juror to serve. This, as we have already indicated, was not open to the defendants to raise after they had elected to accept the jury and to proceed with the trial.

We agree that counsel should have been present when the Trial Judge interviewed the juror, not because the interview was a part of the trial, but because a trial judge ought not to communicate with any juror or prospective juror in the absence of counsel for all parties. The impropriety was not in the interview per se but in holding it in the absence of the defendants' counsel. An impropriety of this type may obviously be waived and, as we have pointed out above, it was effectively waived by the defendants. Moreover, the absence of the defendants' counsel during the interview was in no way prejudicial to the defendants. The defendants make no claim that anything that the Judge said to the juror was improper or prejudicial. As the affidavits submitted by the defendants show, the Judge said nothing to the juror in the absence of the defendants' counsel which he would not have had the right to say in their presence. The defendants raise only the narrow point that they were harmed by the psychological effect upon the juror of the court's indicating to her that she was under suspicion of being friendly to the defendants. This alleged psychological effect would have been the same even if the defendants' counsel had been present. It is thus clear that the error of the Trial Judge in conducting the interview in the absence of the defendants' counsel was not prejudicial.

Furthermore, even if we treat the interview of the juror by the Judge as a part of the trial within the meaning of section 356 of the Code of Criminal Procedure, there is no ground for reversal of the judgments. The interview bore only upon the qualification of a single juror and, with full knowledge of the

situation, the defendants elected to retain the juror.  This effectively waived any objection growing out of their absence. It is now settled that a defendant may waive any objection growing out of his absence during a part of the trial, at least in a noncapital case (*People v. La Barbera,* 274 N. Y. 339; cf. *Howard* v. *Kentucky,* 200 U. S. 164).

In any event, the absence of the defendants during a part of the process of selecting the jury was merely a defect or irregularity in the organization of the jury.  As has already been pointed out, no prejudice was suffered by the defendants by reason of their absence.  A defect or irregularity of this character is immaterial, so long as there was in the end a competent and lawful jury and '' No juror was permitted to sit to whom the defendant made any substantial objection '' (*People* v. *Decker,* 157 N. Y. 186, 192–193; see, also, *Cox* v. *People,* 80 N. Y. 500, and *Ferris* v. *People,* 35 N. Y. 125).

Defects or irregularities in the organization of the jury are '' ' * * * not a ground for reversing a conviction, unless it appears that they operated to the injury or prejudice of the prisoner ' '' (*People* v. *Kruger,* 302 N. Y. 447, 450).

The court also divided upon the original argument with respect to the effect of a conversation between the Trial Judge and the foreman of the jury as to the availability of the exhibits. The defendants were fully advised of the facts and made no objection of any kind at the time.  On the contrary, their counsel later stated that they '' would prefer to await any request of the jury for exhibits before indicating their consent or opposition to the same going into the jury room ''.  The objection comes much too late.  Furthermore, there is no showing of any possible prejudice by reason of this episode.

We recognize that the views herein expressed are at variance with those adopted by the majority of the court upon the original argument.  However, it is conceded that the record before the court on that argument was incomplete and a reargument has been ordered by this court upon the basis of a new and complete record after resettlement of the record by order of the Trial Judge.  The result reached upon the original argument was nullified by the granting of the reargument (4 C. J. S.. Appeal and Error, § 1446).

We must approach the case *de novo* and decide it upon the basis of the record now before us in accordance with our best judgment.  Certain grounds of the reversal have been affected by the additions to the record.  Other grounds have not been

so affected but upon a reargument of the entire case we cannot regard any fragments of the prior decision as binding upon us. It may be that errors which, in their cumulative effect, seemed sufficient to the majority of the court upon the former argument to warrant a reversal, would not be so regarded upon the altered record. We may not speculate as to how the judges who sat upon the former argument would have decided the case upon the present record. The present members of the court must decide the case in accordance with their view of the law and the facts (cf. *Jones* v. *Opelika*, 316 U. S. 584, revd. 319 U. S. 103).

All of the judges, both those who sat upon the original argument and those who sat upon the present argument, were agreed that " amid the mass of proof presented by the People " there was " ample to sustain the verdicts upon which the judgments appealed from were rendered " and that upon a review of the facts they were " satisfied with the conviction in that respect ".

We find no errors of law which warrant a reversal of the convictions (Code Crim. Pro., § 542). The judgments of conviction should be affirmed.

Coon, J. (dissenting). I dissent. I see nothing in the corrected record to change my view.

Mr. Justice Brewster, in his opinion on the previous appeal (280 App. Div. 546), points out that serious errors may not be considered nonprejudicial under section 542 of the Code of Criminal Procedure.

Imrie, J. (dissenting). While I agree with the majority opinion that the corrected record established that there was sufficient proof of the accuracy of the typewritten transcripts of the wire-tape recordings to authorize their use upon the trial, I dissent and agree with the views expressed by Mr. Justice Brewster as to the ex parte contact between the Trial Judge and the jurors.

Foster, P. J., and Bergan, J., concur with Halpern, J.; Coon and Imrie, JJ., dissent, in separate memoranda.

Judgments of conviction affirmed.