WILLIAM C. CARLISLE, Appellant, v COUNTY OF NASSAU, Respondent.

Second Department, August 14, 1978

16

## APPEARANCES OF COUNSEL

*Robinson & Cincotta (Edward T. Robinson, III, William L. Schierberl* and *Nathaniel F. Knappen* of counsel), for appellant.

*Edward G. McCabe, County Attorney (Matthew A. Tedone* and *Edward F. Asip* of counsel), for respondent.

## OPINION OF THE COURT

TITONE, J.

This civil action stems from an altercation between plaintiff and a detective employed by the defendant county. During the encounter, the detective shot plaintiff causing him to become a permanent paraplegic. Because of his being confined to a wheelchair, the trial court refused to permit plaintiff to be present during selection of the jury. According to the Justice in Part I (DEROUNIAN, J.), there was no purpose in having plaintiff present during the jury selection process "except a possible inflammation of the whole panel at this point." On appeal, defendant states in its brief that plaintiff, having chosen competent counsel, waived whatever right he may have possessed to select or participate in the selection of a trial jury. I disagree with the reasoning of both the trial court and defendant.

Whatever may be the origin or true history of the jury trial, it is undeniable that since the Magna Carta, it has been an esteemed and inestimable privilege bestowed upon us by our English forebears. For centuries this great charter has been appealed to as the protector of the people against the encroachment of the prerogatives or despotisms of sovereigns. The English colonists who settled in America brought with them the admirable system of trial by jury as their birthright and inheritance *(Flint Riv. Steamboat Co. v Foster,* 5 Ga 194).

When the Federal Constitution was adopted, the right of

trial by jury in criminal cases was the subject of an express guarantee (US Const, art III, § 2, cl 3). However, jury trial in civil cases was not mentioned therein. As a result, one of the strongest objections against such document as originally adopted was the want of an express provision securing the right to a jury trial in civil cases. This defect was remedied by the adoption of the Seventh Amendment which provides, *inter alia,* that in suits at common law, where the value of the controversy exceeds $20 "the right of trial by jury shall be preserved".

Although the right to trial by jury contained in the Federal Constitution does not bind the States, or operate as a limitation upon them, similar provisions are found in all State constitutions and all have the same purpose (1 Hyatt, Trials, §§ 351, 353). Thus, in New York State, the Constitution provides, *inter alia,* that "[t]rial by jury in all cases in which it has heretofore been guaranteed by constitutional provision shall remain inviolate forever" (NY Const, art I, § 2).

In my opinion, therefore, the fundamental constitutional right of a person to have a jury trial in certain civil cases includes therein the ancillary right to be present at all stages of such a trial, except deliberations of the jury *(Leonard's of Plainfield v Dybas,* 130 NJL 135; *Odum v Corn Prods. Refining Co.,* 173 Ill App 348 [parties interested cannot be excluded]; *Ziegler v Funkhouser,* 42 Ind App 428 [every litigant has a right to be present in person and be heard by counsel on the trial of his case]). Such right is basic to due process of law *(Leonard's of Plainfield v Dybas, supra).*

A party to a civil action not in default is entitled to be present in the courtroom and be represented by counsel at all stages during the actual trial of the action. This does not mean that it is essential to the jurisdiction of the court that parties be present at all times during the trial, but simply that this right cannot be denied them (75 Am Jur 2d, Trial, § 51; cf. *Leed v Robert Joshua, Ltd.,* 72 NYS2d 3; see, also, *Gallavan v Hoffner,* 154 Col 353; *Purvis v Inter-County Tel. & Tel. Co.,* 203 So 2d 508 [Fla]; *Pascarella v Pittsburgh Rys. Co.,* 389 Pa 8; *Raper v Berrier,* 246 NC 193; 88 CJS, Trial, § 40).

The basic right of a party to be present at all stages of a trial has even been held to apply to an examination before trial of a person within or without the State *(Shepherd v Swatling,* 36 Misc 2d 881 [Cooke, J., now Associate Judge of the Court of Appeals]).

■■ Moreover, although *voir dire* examination of members of the jury panel is not considered part of the "trial of the facts", generally speaking a trial begins when the veniremen are called for examination as to their qualifications *(Pratt v Bishop,* 257 NC 486; *Vroman v Kempke,* 34 Wis 2d 680; *Matter of McIntyre,* 78 ND 10; 75 Am Jur 2d Trial, § 3). The orderly conduct of a trial by jury, essential to the proper protection of the right to be heard, entitles the parties who attend for the purpose to be present in person or by counsel at all proceedings from the time the jury is impaneled until it is discharged after the rendering of the verdict *(Fillippon v Albion Vein Slate Co.,* 250 US 76, 81).[1]

■ The suggestion of defendant that a party somehow forfeits his constitutional right to be present at any and all stages of the trial when represented by counsel has no basis either in law or in logic. Waiver of the right to be present at a particular stage of the trial must be strictly construed *(Arrington v Robertson,* 114 F2d 821). Although a party may not act in person at the trial of the action when represented by an attorney, except by consent of the court (CPLR 321, subd [a]), his right not only to be an interested and concerned observer of a proceeding which ultimately affects him, but to help plan and plot trial strategy is in no way denigrated by the presence of retained or assigned counsel. The attorney is not the alter ego of his client, but his representative or agent. As such he may not supplant the client either at his or the court's unbridled pleasure.

■ That a party has the unqualified right to be present at the selection of a jury from the panel is evidenced from provisions of CPLR article 41. Under that article it is the party and not the attorney who may demand a trial by jury (CPLR 4102, subd [a]), may move to have a Judge present at the examination of the jurors (CPLR 4107), may object to the qualifications of an individual juror or the array (CPLR 4108), and may interpose both peremptory challenges and challenges for cause (CPLR 4109, 4110).

---

1. Mr. Justice HAWKINS, in his dissent, contends that the cases cited below are not applicable because they are not factually similar to this one. Significantly, however, he does not deny that each enunciates one of the following rules of law: (1) a party is entitled to be present at all stages of a civil trial *(Leonard's of Plainfield v Dybas; Leed v Robert Joshua, Ltd.; Gallavan v Hoffner; Purvis v Inter-County Tel. & Tel. Co.; Raper v Berrier);* or (2) generally speaking, a trial begins when the veniremen are called as to their qualifications *(Pratt v Bishop; Vroman v Kempke; Matter of McIntyre).*

■ In its brief defendant contends that the absence of the plaintiff from the jury selection process was merely an irregularity and, in any event, that there was no showing of prejudice to plaintiff arising from such absence. However, what is before us at this time is not a mere absence from a portion of the jury selection process because of the inadvertence or design of a party but, rather, a baseless exclusion of the plaintiff by a Justice of the trial court. The right of challenge, a vital component of the *voir dire* of a jury panel, is an essential element of the constitutional right of trial by jury (2 Blackstone's Commentaries [Jones ed], §§ 475, 476; 1 Hyatt, Trials, § 525). Thus, a litigant, through his counsel, has an unquestioned right to pass upon the acceptability of prospective jurors and insist that they be challenged peremptorily or for cause. The denial of that right in this case was prejudicial per se.[2]

■ The concept that a party's presence at the *voir dire* of the jury panel is merely a privilege, and that the presence ripens into an absolute right during the testimonial stages of the trial, is also without merit. As experienced trial attorneys will attest, selection of a jury is a vital and often crucial aspect of any trial. It has been aptly described as the cornerstone of the right to a trial by an impartial jury *(Melson v Dickson,* 63 Ga 682). Thus, the determination which holds in effect that a party has a right to be present when he or his claim is judged by his peers, but not when the individual peers are being selected, is a patent anomaly.

■ Finally, a judicial determination that the physical appearance of a party, which he has not affected, may be the basis for precluding such party from any stage of a trial, is

2. In his dissent, Mr. Justice HAWKINS relies on *People v O'Keefe* (281 App Div 409, affd 306 NY 619, cert den 347 US 989), to support his contention that exclusion of plaintiff from the entire jury selection process was at most "a mere defect or irregularity" in the organization of the jury. However, *O'Keefe* merely involves an interview by the trial court, without defendants' counsel being present, of a juror *already selected,* because of information the trial court had received that, *inter alia,* she was acquainted with a person who had introduced her to a wife of one of the defendants. After the trial court informed defendants' counsel of the interview, a decision was made by them not to have the juror excused. Although noting under the circumstances that the defect or irregularity was immaterial, the Appellate Division, Third Department, also stated (p 417): " '*No juror was permitted to sit to whom the defendant made any substantial objection*' " (emphasis supplied). In the case at bar, by being wrongfully excluded from the entire jury selection process, plaintiff personally was effectively foreclosed from raising any objection, either to the array or to individual jurors.

fraught with danger in its implications. My views on this facet of the case are best summarized in *Florida Greyhound Lines v Jones* (60 So 2d 396 [Fla]). In that action, involving damages resulting from a collision between a bus and an automobile, the defendant bus company challenged the propriety of the proceeding because the injured plaintiff was permitted to appear before the jury in a stretcher. In rejecting such challenge, the Supreme Court of Florida succinctly and cogently expressed what I believe to be the correct view (p 397): "One who institutes an action is entitled to be present when it is tried. That, we think, is a right that should not be tempered by the physical condition of the litigant. It would be strange, indeed, to promulgate a rule that a plaintiff's right to appear at his own trial would depend on his personal attractiveness, or that he could be excluded from the court room if he happened to be unsightly from injuries which he was trying to prove the defendant negligently caused. The appellee was properly present. If the use of stretcher and attendants was affected there would be occasion for the court to regulate the appearance to prevent the opposite party from being victimized and the jury from being deceived by the subterfuge, but no such deceit is claimed to have been practiced in this trial."

In *Bryant v Kansas City Ry. Co.* (286 Mo 342), the Supreme Court of Missouri, in banc, held that a four-year-old plaintiff seeking to recover for injuries necessitating the amputation of his leg, had a right to remain in the courtroom during the trial even though he was too young to testify, and though he necessarily was using crutches, so long as no attempt was made to parade him before the jury. (See, also, *Purvis v Inter-County Tel. & Tel. Co.,* 203 So 2d 508 [Fla], *supra;* cf. *Dickson v Bober,* 269 Minn 334.)

In the case at bar it is undenied that the plaintiff's injuries and paraplegic condition both unfortunately exist, and no subterfuge or deceit was practiced by plaintiff in that regard at the trial. Therefore, the amended judgment in favor of the defendant should be reversed and the action remanded for a new trial.

MOLLEN, P. J. (dissenting). I dissent and would affirm. It was error for the plaintiff to have been excluded during the selection of the jury. However, in the absence of any prejudice, the error was not so egregious as to require reversal.

HAWKINS, J. (dissenting). I dissent and vote to affirm.

The action was called for selection of a jury. Defendant's counsel thereupon inquired if plaintiff, a paraplegic confined to a wheelchair, intended to be present in the jury selection room. Upon being informed that such was plaintiff's intention, defendant moved to exclude plaintiff, whereupon an immediate ruling was sought from the court. The trial court sustained the objection, stating: "The court sees no purpose except a possible inflammation of the whole panel at this point. Of course, the plaintiff will be present all during the trial in his wheelchair, and the jury will be there to see his condition. But for the selection of the jury, I will rule that he will not be present."

In so ruling, in my opinion, the court did not commit reversible error.

The action arose from an incident involving plaintiff and a Nassau County detective. Plaintiff was shot twice by a police officer who, at the time, had been acting as a "decoy". The officer, attacked from the rear, was struck on the head with a hard object and seized by his throat. The police officer's defense was self-defense. As a result of the incident, plaintiff was grievously wounded and rendered a permanent paraplegic. After a trial lasting some three weeks, the jury returned a verdict (five to one) for the defendant.

The majority, in reversing, holds that "the fundamental constitutional right of a person to have a jury trial in certain civil cases includes therein the ancillary right to be present at all stages of such a trial, except deliberations of the jury (*Leonard's of Plainfield v Dybas*, 130 NJL 135)." Also cited is *Shepherd v Swatling* (36 Misc 2d 881). Unquestionably, a party has a right to be present at all stages of a trial except for the deliberations of the jury. The question remains whether the examination of prospective jurors is such an integral and inseparable stage of a trial.

Conceding that the *voir dire* examination of members of the jury panel is not considered part of the "trial of the facts", the majority, nevertheless, would include that as an essential part of the trial on the premise that a party or his counsel must be present at all phases of a trial save, of course, for the jury's deliberations.

The majority opinion stresses *Florida Greyhound Lines v Jones* (60 So 2d 396 [Fla]). A close reading of that case reveals that it was the defendant who, for the first time on the appeal, raised the question of prejudice resulting from the

plaintiff having appeared before the jury on a stretcher, attended by a nurse and a hospital attendant. That court held it was proper for plaintiff to be so present and so attended since there was no question of the injury being feigned, or the jury being "victimized", or "deceived by the subterfuge". There is, however, nothing in that opinion to indicate that the plaintiff was also present and in such manner during the *voir dire* examination of the jury panel.

*Leonard's of Plainfield v Dybas (supra)*, cited as authority for reversal, is also inapplicable. The error there was committed by the Trial Judge entering the jury room upon the jury's request for further instructions, but doing so with neither counsel being present (130 NJL, at p 138): "Here, the additional directions were given to the jury in secret. Appellant's counsel was denied admittance to the proceeding. This was a flagrant disregard of a fundamental right."

Nor is *Shepherd v Swatling (supra)* pertinent, for Judge COOKE, then sitting in Special Term in Rensselaer County, held merely that upon the pretrial examination of two defendants, he would not direct that each be examined separately on the ground that a party cannot be excluded from the trial or pretrial proceeding (36 Misc 2d, at p 882): "Since the exclusion of a party on a trial would not be proper, it will not be ordered on the examination before trial."

Particularly pertinent, on the contrary, is *People v O'Keefe* (281 App Div 409, affd 306 NY 619, cert den 347 US 989), which held that it was not prejudicial error for a Trial Judge to conduct an interview of a juror, who had been accepted but might possibly be disqualified, in the absence of defendants' counsel. Granted that there was a question of waiver by defendants, the court, nevertheless, stated (281 App Div, at p 417): "In any event, the absence of the defendants during a part of the process of selecting the jury was merely a defect or irregularity in the organization of the jury. As has already been pointed out, no prejudice was suffered by the defendants by reason of their absence. A defect or irregularity of this character is immaterial, so long as there was in the end a competent and lawful jury and 'No juror was permitted to sit to whom the defendant made any substantial objection' *(People v. Decker,* 157 N.Y. 186, 192-193; see, also, *Cox v. People,* 80 N.Y. 500, and *Ferris v. People,* 35 N.Y. 125)."

The CPLR is of little aid in resolving the issue. Upon its original enactment, CPLR 4107 simply provided: "Judge pres-

ent at examination of jurors. On application of any party, the judge shall be present at the examination of the jurors."

A note to the rule as it then read states (Legislative Studies and Reports, McKinney's Cons Laws of NY, Book 7B, CPLR 4109, p 134): "This rule has no counterpart in the civil practice act or in the rules of civil practice."

Thereafter, effective September 1, 1964, CPLR 4107 was amended to substitute the word "a" for the word "the" so that it presently reads: "On application of any party, a judge shall be present at the examination of the jurors."

The amendment was a compromise since, as Professor McLaughlin in his Supplementary Practice Commentary states, the Supreme Court Trial Justices recommended "that the presence of a judge at a *voir dire* would remain in the discretion of the court, and would not become mandatory even where the parties requested a judge."

The commentary concludes: "The Judicial Conference in amending the rule in 1964 noted the sentiment of the justices, but withheld making any change in that respect, electing rather to await the results of experience with the rule in its present form."

Significantly, there are no citations construing either the former or the present CPLR 4107.

Surely, if a Trial Judge's presence at the *voir dire* can be dispensed with, so can a party's, for clearly the jury selection process is preparatory to and not the very trial; otherwise, the Trial Judge's absence would be inexcusable whether or not CPLR 4107 was invoked by either party.

The majority speaks of a "party" and "not the attorney" demanding a jury trial under CPLR 4102, or invoking CPLR 4107 to have a Judge preside over the selection of the jurors from the array. Realistically, for "party" there must be substituted his attorney, for it is the latter who necessarily and actually makes the requisite demand or motion.

We should take judicial notice that the *voir dire* examination in civil actions in this Department is rarely conducted in the presence of the Trial Judge. The Legislative Study and Report to CPLR 4107 notes (McKinney's Cons Laws of NY, Book 7B, CPLR 4107, p 134): "Although the judge usually presides in upstate courts, in New York City it is customary for the attorneys to conduct the voir dire without the judge

being present, questions being referred to him when necessary."

That practice is not confined to New York City, but obtains virtually throughout the State. Indeed, barring an extraordinary situation, it is a rarity for the Trial Judge to be present. It thus follows that the *voir dire* has never been regarded as so vital as to compel uniformly the presence of the Trial Judge.

In asserting it was jurisdictionally defective to have excluded plaintiff, the majority, *inter alia,* cite *Leed v Robert Joshua, Ltd.* (72 NYS2d 3). The sparse holding there simply reaffirmed that whereas witnesses could be excluded—presumably from the trial—it does not apply to a party who has a right to be present at all times. Again, no one questions the right of this plaintiff to have been present throughout the trial; in fact, he was.

*Gallavan v Hoffner* (154 Col 353) held that the trial court committed reversible error in denying a continuance during the second day of an actual trial. Plaintiff therein had been injured by falling in the lady's restroom of the courthouse on the morning of the trial; she was hospitalized for that injury at midnight of that day. The trial court, nevertheless, ordered the trial to continue—not the *voir dire.*

*Purvis v Inter-County Tel. & Tel. Co.* (203 So 2d 508 [Fla]) is similarly inapplicable. That plaintiff's action was for personal injuries. The issue there posed was (p 509) " '[d]id the court commit prejudicial error in excluding the plaintiff from the courtroom during his own trial on the grounds that his physical appearance and conduct may have resulted in prejudice to either party?' " Plaintiff, whose mental attitude and physical appearance made his rationality questionable, had no guardian to represent him. After careful analysis of the record, the court concluded that the exclusion of plaintiff from the courtroom was error. Again the *voir dire* was not involved, but the very trial itself.

In *Pascarella v Pittsburgh Rys. Co.* (389 Pa 8) the Supreme Court of Pennsylvania held that plaintiffs suing for personal injuries were not required to leave the courtoom while their physician was testifying as to the extent of their injuries. *Raper v Berrier* (246 NC 193), a custody proceeding, held that although a child could be questioned in open court, the court could do so privately only by consent of the parties.

Nor are any of the other authorities cited applicable. *Pratt*

*v Bishop* (257 NC 486) involved a failure to object by motion before the trial to the admissibility of several depositions. *Vroman v Kempke* (34 Wis 2d 680) involved the timeliness of an offer in settlement under a Wisconsin statute whereby, if made "before trial", a defendant could save costs. The court there held it had to be made appreciably prior to the date of the actual trial or before the impaneling of the jury. In *Matter of McIntyre* (78 ND 10, 28) the phrase "the impaneling and swearing of the trial jury is a part of the trial" refers to the belatedness of the objection to the court's jurisdiction having, *inter alia,* been made after the jury had been impaneled and sworn.

The only adjudication giving some inferential support to the majority's position which my research has unconvered is *Harrington v Decker* (134 Vt 259). The procedure there employed was for the court clerk to notify counsel when a jury was to be drawn. Counsel, in turn, notified his client of a change in schedule on the morning of the stated day. Plaintiff, however, failed to appear until after the jury had been impaneled. The court, nevertheless, refused to upset the jury's verdict although reasserting the right to a jury trial, stating, in a very terse opinion (p 261): "This right carries with it the privilege to be present at the selection of the jury. Although this Court does not approve of the non-consensual drawing of civil juries in the absence of the parties, the plaintiff's right in the case at bar was not denied in view of the failure of the plaintiff to appear when properly notified or to show inability to be present, and the failure of the plaintiff to show any prejudice."

Apart from the parochial procedure not commending it as a precedent for our court to adopt, and it being dicta, at bar, as in *Harrington,* there is no showing of prejudice.

Significantly, although deemed an historically rooted and nurtured right, nevertheless, the prevailing opinion, tentatively and cautiously classifies it as an "ancillary right." Webster's New Collegiate Dictionary defines "ancillary" as "subordinate, subsidiary"; "ancillary, supplementary". The American Heritage Dictionary states it derives from the Latin "ancillaris", i.e., "servile". By summoning these venerable founts of our jurisprudence, the impression imparted is that our contemporary mode of selecting jurors, like Athena, sprang full-grown from the Zeus of Magna Carta, and that after our Independence, save for preserving jury trials in civil

actions by adoption of the Seventh Amendment, we merely followed English law and practice. History, however, is to the contrary. As further noted in the Legislative Studies and Reports to CPLR 4107: "The New York system is based on a practice which evolved early in the history of the United States. In England, the common law rule never authorized an examination of jurors upon their appearance in court before they were challenged. Challenges were rarely used, and only if used was there any voir dire examination of a juror. Early in the history of the United States, it became usual for the lawyers to interrogate the members of the jury panel as a basis for the exercise of challenges. Vanderbilt, Judges and Jurors: Their Functions, Qualifications and Selection 72 (1956)."

The attitude of the Colonists and their immediate successors is best epitomized by Roscoe Pound in The Spirit of the Common Law. Prefacing his comments by referring to James Fenimore Cooper's "Pioneers" and its "striking picture" of New York in 1833, and noting "the spirit of our American common-law polity" respecting the stilted, technically complicated English procedure, Pound stated (p 124): "It presupposes a public which in the jury box may be relied upon to enforce law and vindicate justice between man and man intelligently and steadfastly. In other words, our common-law polity presupposes an American farming community of the first half of the nineteenth century; a situation as far apart as the poles from what our legal system has had to meet in the endeavor to administer justice to great urban communities at the end of the nineteenth and in the twentieth century."

If resort must be had to Blackstone, Chase's third edition of Blackstone's Commentaries, editing Book 3, chapter 23 of Blackstone's Commentaries, chapter 18, entitled "Of the Trial By Jury", contains no reference whatever to a litigant participating in the *voir dire.* Indeed, after reviewing the origins of trial by jury, which Blackstone asserts long antedated Magna Carta, and after discussing challenges to the "array" and to the "polls", he merely concludes (p 795): "When a sufficient number of persons empanelled, or *talesmen,* appear, they are then separately sworn, well and truly to try the issue between the parties, and a true verdict to give *according to the evidence;* and hence they are denominated the jury, *jurata,* and jurors, *sc. juratores"* (emphasis supplied).

The majority stresses *Fillippon v Albion Vein Slate Co.* (250

US 76, 81). That ruling of the Supreme Court of the United States, I submit, is totally inapplicable. The reversal there resulted from a response to an inquiry from the jury which had retired to consider the verdict. The Trial Judge sent the jury a supplementary instruction, in writing, on the question of contributory negligence. Such unilateral judicial conduct was deemed reversible error for neither the parties nor their counsel were present; hence, there was no opportunity to make timely objection or to take exception to the instruction. The manner in which it was given was deemed not equivalent to being present upon an instruction, which no one will gainsay is part of a trial.

The inescapable conclusion is that Magna Carta and the Federal and State Constitutions were observed, for plaintiff, unquestionably, did have a trial by his peers who were selected by due process and who determined the issue after a full trial. In sum, what plaintiff sought was to confront an entire array with demonstrative evidence prior to the very trial. The plaintiff's right to a trial by jury is not an issue in this appeal.

Plaintiff was not excluded from the trial; nor were the jurors deprived of observing plaintiff thoughout the trial. Under the circumstances, the trial court should not be deemed to have committed reversible error. That such exclusion was discreetly exercised is buttressed by plaintiff necessarily contending—or speculating—that the jurors selected or unselected would have arrived at a contrary verdict had they observed him at the *voir dire.* The jurors selected found no cause of action. Paradoxically, if plaintiff is correct, it vindicates the trial court's excluding him since it confirms that his presence was designed for that very purpose.

In sum, even if the ruling was erroneous, it was not so grievous as to constitute reversible error.

SHAPIRO and MARGETT, JJ., concur with TITONE, J.; MOLLEN, P. J., dissents and votes to affirm the amended judgment with a memorandum; HAWKINS, J., dissents and votes to affirm the amended judgment, with an opinion.

Amended judgment of the Supreme Court, Nassau County, entered February 3, 1977, reversed, on the law, and new trial granted, with costs to abide the event.